## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK
## BUFFALO DIVISION

NUHN INDUSTRIES LTD.,

    Plaintiff,

    v.

ATLAS AG SERVICES, LLC,

    Defendant.

CASE NO.    1:23-cv-368

JURY TRIAL DEMANDED

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Nuhn Industries Ltd. ("Nuhn" or "Plaintiff"), for its Complaint against Defendant Atlas Ag Services, LLC ("Atlas Ag" or "Defendant"), alleges as follows:

### NATURE OF THE ACTION

1.    This is an action for patent infringement under 35 U.S.C. § 271, *et. seq.*, by Nuhn against Defendant for infringement of United States Patent Nos. 10,974,557, 11,358,425, 11,491,835, and 11,541,708 (collectively, "the Patents-in-Suit") by using the Bazooka Farmstar, LLC ("Bazooka") Wolverine Series Agitation Boat in the United States.

### PARTIES

2.    Nuhn is a corporation organized and existing under the laws of the province of Ontario, Canada, having a principal place of business at 4816 Line 34, Sebringville, ON N0K 1X0 Canada.

3.    Among numerous other products, Nuhn markets an amphibious pumping vehicle for use in agitating manure lagoons, that is known as the Lagoon Crawler. The Lagoon Crawler is covered by claims of the Patents-in-Suit.

{9190932: }

1



4.      Nuhn has sold the Lagoon Crawler to customers within New York.

5.      On information and belief, Atlas Ag is a limited liability company organized and existing under the laws of the state of New York, having a principal place of business at 5320 Griffith Road, Gainesville, NY 14066. On information and belief, Atlas Ag is registered to do business in the State of New York and may be served at its principal place of business at 5320 Griffith Road, Gainesville, NY 14066.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the matters asserted in this Complaint under 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271.

7.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, due at least to Defendant being a New York limited liability company having its principal place of business in the State of New York and to Defendant's substantial business in this forum, including at least because Defendant has infringed the Patents-in-Suit directly in this District. Defendant regularly transacts business in the State of New York and within this District.

Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services in the State of New York and this District, and has purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District.

8.      On information and belief, this Court has personal jurisdiction over Defendant because it has committed acts of patent infringement in the State of New York and in this District. On information and belief, Defendant directly has used in the United States, including within the State of New York and this District, products that infringe one or more claims of the Patents-in-Suit.

9.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and 1400(b). Defendant resides in this District. Defendant is a limited liability company organized and existing under the laws of the State of New York and has a principal place of business in the State of New York and in this District. Additionally, Defendant has a regular and established place of business in this District. On information and belief, Defendant has committed, and continues to commit, acts of direct infringement in this District by using products that infringe the Patents-in-Suit in this District.

## NUHN'S LEGACY OF INNOVATION

10.     Nuhn is a family-owned business that was founded in 1902 as Nuhn Welding & Manufacturing in Wartburg, Ontario, Canada. Initially, the business specialized in making horseshoes.

11.     Since its founding, Nuhn has consistently adapted to changing needs in the farming industry, creatively providing solutions to that industry. For example, in 1965, Dennis Nuhn made

the company's first liquid manure spreader. The spreader was fabricated from an old gas tank with airplane tires.

12.     Nuhn's legacy of creativity has led to the development of a broad patent portfolio consisting of innovative, unique designs related to the liquid manure handling industry. The first such patent was an innovative dual tanker design that allows farmers to increase loads by up to 70%, with greater ease of handling.

13.     An additional patented innovation is an alley vacuum that allows for the cleanup of manure in dairy barns. The inventions described and claimed in these patents have revolutionized how dairy barns are made and how liquid manure is handled.

14.     As yet another example, Nuhn developed a multi-pump outlet that enables 30% more volume with the same horsepower as a conventional pump. This patented innovation has taken over the industry given the time savings, fuel savings, and better performance.

15.     This lawsuit concerns another significant innovation from Nuhn, its Lagoon Crawler amphibious agitation vehicle, which is covered by the claims of the Patents-in-Suit.

16.     Prior to this innovation, in 2009-2010 the best solution for pumping out a manure lagoon was an agitator that required a long pump driven by a tractor along the bank of a lagoon. Depending on the size of the lagoon, as many as four pump/tractor combinations were required to adequately mix the lagoon, and not leave any solids behind. To the extent this pump/tractor method was not sufficiently effective, lagoon operators would be required to scoop out residual solids from the pit.

17.     While other agitation boat devices were introduced to the market, they had numerous drawbacks that the Patents-in-Suit overcame. For example, the Lagoon Crawler made it easier for the vehicle to enter and exit the lagoon. A typical lagoon has a berm that requires

navigation both up and then back down. Prior art designs required a trailer to launch the boat. Compounding this difficulty was the fact that the terrain around a lagoon is often muddy and wet. Indeed, a typical problem with the prior art boats was that they would get stuck on the bank or enter the lagoon too quickly and nosedive under the liquid.



18.    Relatedly, prior art designs were often ineffective in exiting the lagoon, either because they got stuck in the mud at the bottom of the lagoon or got stuck on "islands" of solid buildup in the lagoon. This could lead to safety concerns when a tractor used chains to pull the boat from the lagoon. If the boat was stuck in the mud, the chains were known to break, endangering the drivers of the tractors.

19.    The inventions of the Patents-in-Suit solved these considerable deficiencies in the prior art designs. As an all-terrain, amphibious vehicle, the Nuhn inventions allowed for superior agitation without fear of the vehicle becoming stuck either on the lagoon floor or islands of solid waste that may have formed. Indeed, the Lagoon Crawler, which is a commercial embodiment of

the inventions claimed in the Patents-in-Suit, was an instant success leading to significant commercial success.

## THE PATENTS-IN-SUIT

20.     On April 13, 2021, U.S. Patent No. 10,974,557 B2 ("the '557 B2 Patent"), entitled "Amphibious Pumping Vehicle," was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '557 B2 Patent is attached hereto as Exhibit 1.

21.     On December 28, 2022, the United States Patent and Trademark Office duly and legally issued Ex Parte Reexamination Certificate Number 10,974,557 C1 ("the '557 Reexamination Certificate"). With the issuance of the '557 Reexamination Certificate, the United States Patent and Trademark Office determined: (1) claims 1 and 8–10 of the '557 B2 Patent to be patentable as amended; (2) claims 2–7 and 11–13 of the '557 B2 Patent, dependent on an amended claim, to be patentable; and (3) new claims 14–80 added to the '557 B2 Patent to be patentable. A true and accurate copy of the '557 Reexamination Certificate is attached hereto as Exhibit 2. The '557 B2 Patent and the '557 Reexamination Certificate are hereinafter collectively referred to as the '557 Patent.

22.     On June 14, 2022, U.S. Patent No. 11,358,425 B1 ("the '425 B1 Patent"), entitled "Amphibious Pumping Vehicle," was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '425 B1 Patent is attached hereto as Exhibit 3.

23.     On November 16, 2022, the United States Patent and Trademark Office duly and legally issued Ex Parte Reexamination Certificate Number 11,358,425 C1 ("the '425 Reexamination Certificate"). With the issuance of the '425 Reexamination Certificate, the United States Patent and Trademark Office confirmed the patentability of all original claims 1–21 of the '425 B1 Patent. A true and accurate copy of the '425 Reexamination Certificate is attached hereto

{9190932: }

as Exhibit 4. The '425 B1 Patent and the '425 Reexamination Certificate are hereinafter collectively referred to as the '425 Patent.

24.     On November 8, 2022, U.S. Patent No. 11,491,835 ("the '835 Patent"), entitled "Amphibious Pumping Vehicle," was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '835 Patent is attached hereto as Exhibit 5.

25.     On January 3, 2023, U.S. Patent No. 11,541,708 ("the '708 Patent"), entitled "Amphibious Pumping Vehicle," was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '708 Patent is attached hereto as Exhibit 6.

### THE WOLVERINE SERIES AGITATION BOAT

26.     Upon information and belief, in early 2021, Bazooka began marketing its Wolverine Series Agitation Boat. *See* May 13, 2021, video published on YouTube.com (https://www.youtube.com/watch?v=ehAHKL442as).

27.     The Wolverine Series Agitation Boat is marketed as a floating vehicle that can be driven into a manure lagoon in view of four "large diameter, aggressive tires [that] make climbing out of steep banks effortless." (https://bazookafarmstar.com/wolverine-series/; https://www.bazookafarmstar.com/wp-content/uploads/2021/04/IMG_3795-Edited-2-1024x683.jpg).



28.    The Wolverine Series Agitation Boat also includes a fluid nozzle connected to a pump. The pump is powered by an engine. The Wolverine Series Agitation Boat is described as having an "18" Bazooka Farmstar Submersible Pump & Front Gun." (https://www.bazookafarmstar.com/equipment/wolverine-agitation-boat/#pid=4)

# MODELS

## 401-0010

- 18" Bazooka Farmstar Submersible Pump & Front Gun

(https://bazookafarmstar.com/wp-content/uploads/2021/05/IMG_3850-straightened-1024x683.jpg).



29.    The Wolverine Series Agitation Boat is controllable by a remote control.

(https://bazookafarmstar.com/wp-content/uploads/2021/04/GOPR1101-1620x1080.jpg).



**DEFENDANT'S INFRINGING USE OF THE WOLVERINE SERIES AGITATION BOAT**

30.    Upon information and belief, since at least as early as February 2, 2022, Atlas Ag

has used the Wolverine Series Agitation Boat to provide "lagoon agitation to [its] ever growing

offering of services," wherein use of the Wolverine Series Agitation Boats constitutes infringement of the Patents-in-Suit. Exhibit 7 at p. 2.  (Exhibit 7 comprises true and accurate copies of Atlas Ag's Facebook Posts).

31.     Upon information and belief, on or about March 9, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat and stated "1 hour makes a huge difference with the Wolverine. Contact us to find out more, and get on our schedule." Exhibit 7 at p. 4. Atlas Ag's use of the Wolverine Series Agitation Boats constitutes infringement of the Patents-in-Suit.

32.     Upon information and belief, on or about March 16, 2022, Atlas Ag performed manure lagoon agitation services through the use of one or more Wolverine Series Agitation Boats and stated "Have the aliens landed? No, it's just the Wolverine causing a stir. Contact use to learn more about our lagoon agitation service. We are willing to travel with our two boats." Exhibit 7 at p. 6. Atlas Ag's use of the Wolverine Series Agitation Boats constitutes infringement of the Patents-in-Suit.

33.     Upon information and belief, on or about March 21, 2022, Atlas Ag performed manure lagoon agitation services through the use of one or more Wolverine Series Agitation Boats and stated "So a Wolverine and an Outlaw arrive at a lagoon… Working with our friends at Wee Hauler Agricultural Trucking to stir and pump this sand laden [poop emoji] today." Exhibit 7 at p. 8. Atlas Ag's use of the Wolverine Series Agitation Boats constitutes infringement of the Patents-in-Suit.

34.     Upon information and belief, on or about March 25, 2022, Atlas Ag performed manure lagoon agitation services through the use of two Wolverine Series Agitation Boats and stated "Boat #2 arrived this week. Kyle and Owen put it through its [poop emoji] baptism today

and tested it out. This duo made quick work of clearing the crust on this lagoon. Contact us for more information and availability. We are ready to travel the northeast with these impressive stirring machines." Exhibit 7 at p. 10. Atlas Ag's use of the Wolverine Series Agitation Boats constitutes infringement of the Patents-in-Suit.

35.     Upon information and belief, on or about April 8, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat. Exhibit 7 at p. 14. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

36.     Upon information and belief, on or about April 10, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat. Exhibit 7 at p. 20. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

37.     Upon information and belief, on or about April 23, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat. Exhibit 7 at p. 23. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

38.     Upon information and belief, on or about April 26, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat and stated "The Wolverine slays another lagoon in the north country to start this chilly Tuesday. 30 minutes of crust busting and the rest is just all about the stirrrr." Exhibit 7 at p. 26. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

39.     Upon information and belief, on or about April 28, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat and stated

"Pardon us while we drive across this meadow, er… lagoon. Crust busting made easy with the Wolverine." Exhibit 7 at p. 28. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

40.    Upon information and belief, on or about May 10, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat and stated "Cleared another lagoon disguised as a field today. This Wolverine is in NNY for this week and next week. Contact us to get on the schedule." Exhibit 7 at p. 30. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

41.    Upon information and belief, on or about July 9, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat and stated "Another sand pit, another satisfied agitation customer. Contact us to get on the schedule for Wolverine agitation boat service. The fall bookings are filling up quickly!" Exhibit 7 at p. 33. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

42.    Upon information and belief, on or about July 18, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat. Exhibit 7 at p. 35. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

43.    Upon information and belief, on or about August 2, 2022, Atlas Ag performed manure lagoon agitation services through the use of a Wolverine Series Agitation Boat. Exhibit 7 at p. 43. Atlas Ag's use of the Wolverine Series Agitation Boat constitutes infringement of the Patents-in-Suit.

44.    Upon information and belief, on or about November 19, 2022, Atlas Ag stated that "[a]s we have traveled the northeast with our Wolverines, client after client have been impressed

with the capabilities of these machines. Though we still have plenty to do in this fall manure season, we are already looking ahead to 2023. Due to the success of the Wolverine and keeping par with industry standard, our rates will be going up January 1. We are offering a season-end prepay promo as we gear up for 2023. Secure your priority spot on our agitation schedule starting next spring and lock in a lower rate by pre paying your agitation hours for next year." Exhibit 7 at p. 49.

45.     Upon information and belief, on or about November 19, 2022, Atlas Ag stated "Our shiny new Bazooka Farmstar Wolverine with Cummins power is polished and ready to show in the PikeSide Ag Machinery, LLC booth at the New York Farm Show this week. Come talk to Kyle, Danny, Owen, and the rest of the guys about our agitation services, along with everything else we offer for custom farming services this year." Exhibit 7 at p. 50.

## CAUSES OF ACTION

### Count 1 - Infringement of the '557 Patent by Defendant

46.     Nuhn incorporates by reference and realleges each and every allegation of the previous paragraphs as if set forth herein.

47.     Nuhn owns all substantial right, title, and interest in and to the '557 Patent, including the sole and exclusive right to prosecute this action and enforce the '557 Patent against infringers, and to collect damages for all relevant times.

48.     The '557 Patent generally describes an amphibious vehicle that is equipped for the pumping of liquid manure, such as animal manure contained in a farm lagoon.

49.     The written description of the '557 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50.    Defendant has used its one or more Wolverine Series Agitation Boats to perform manure lagoon agitation services, which infringes one or more claims of the '557 Patent.

51.    As set forth in the attached non-limiting claim chart (Exhibit 8), upon information and belief, Defendant, without authorization or license from Nuhn, has directly infringed and continues to directly infringe at least Claim 1 of the '557 Patent, either literally or under the doctrine of equivalents, by using the Wolverine Series Agitation Boat to perform manure lagoon agitation services.

52.    To the extent it is alleged that the Wolverine Series Agitation Boat does not literally infringe at least Claim 1 of the '557 Patent, Defendant infringes at least Claim 1 of the '557 Patent under the doctrine of equivalents. The difference between at least Claim 1 of the '557 Patent and the Wolverine Series Agitation Boat is insubstantial. Additionally, the Wolverine Series Agitation Boat performs substantially the same function in substantially the same way with substantially the same result as each recitation of at least Claim 1 of the '557 Patent. In particular, to the extent it is alleged that the Wolverine Series Agitation Boat lacks a "nozzle," upon information and belief, the Wolverine Series Agitation Boat includes what is described as a "Front Gun" that has a portion of a fluid conduit connected to and at least partially surrounded by a structure that permits the Wolverine Series Agitation Boat to pump manure and return a percentage of the manure back to the pit or lagoon in the form of a high volume spray to disrupt a crust that can develop on the surface of a pit or lagoon and recirculate the manure as shown below in a side-by-side comparison with the Nuhn Lagoon Crawler. As such, the Wolverine Series Agitation Boat performs

substantially the same function in substantially the same way with substantially the same result as each recitation of at least Claim 1 of the '557 Patent.

| Nuhn Lagoon Crawler | Wolverine Series Agitation Boat |
|---|---|
|  | (https://www.bazookafarmstar.com/wp-content/uploads/2023/01/Wolverine-Gallery-Image-4_1920x1355.jpg) |

Atlas Ag has used and continues to use the submersible pump and the "Front Gun" of the Wolverine Series Agitation Boat to pump manure and return a percentage of the manure back to the pit or lagoon in the form of a high volume spray to disrupt a crust that can develop on the surface of a pit or lagoon and recirculate the manure as shown below:



*See* Exhibit 7 at p. 10.

53.     Nuhn has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Nuhn in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

54.     Defendant's infringement of the '557 Patent has caused, and will continue to cause, Nuhn to suffer substantial and irreparable harm.

55.     Nuhn is entitled to injunctive relief in accordance with 35 U.S.C. § 283.

56.     Upon information and belief, Defendant has notice of the '557 Patent. First, this Complaint informs Defendant about the '557 Patent. Second, Nuhn complies with the marking requirements of 35 U.S.C. § 287 with respect to the '557 Patent. Since obtaining knowledge of its infringing activities, Defendant has failed to cease its infringing activities.

{9190932: }

57.   Defendant's infringement of the '557 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Nuhn's rights under the patent, justifying a trebling of damages under 35 U.S.C. § 284.

58.   Defendant's infringement is exceptional and entitles Nuhn to attorneys' fees and costs under 35 U.S.C. § 285.

### Count 2 - Infringement of the '425 Patent by Defendant

59.   Nuhn incorporates by reference and realleges each and every allegation of the previous paragraphs as if set forth herein.

60.   Nuhn owns all substantial right, title, and interest in and to the '425 Patent, including the sole and exclusive right to prosecute this action and enforce the '425 Patent against infringers, and to collect damages for all relevant times.

61.   The '425 Patent generally describes an amphibious vehicle that is equipped for the pumping of liquid manure, such as animal manure contained in a farm lagoon.

62.   The written description of the '425 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.   Defendant has used its one or more Wolverine Series Agitation Boats to perform manure lagoon agitation services, which infringes one or more claims of the '425 Patent.

64.   As set forth in the attached non-limiting claim chart (Exhibit 9), upon information and belief, Defendant, without authorization or license from Nuhn, has directly infringed and continues to directly infringe at least Claim 1 of the '425 Patent, either literally or under the

doctrine of equivalents, by using the Wolverine Series Agitation Boat to perform manure lagoon agitation services.

65.     Nuhn has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Nuhn in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

66.     Defendant's infringement of the '425 Patent has caused, and will continue to cause, Nuhn to suffer substantial and irreparable harm.

67.     Nuhn is entitled to injunctive relief in accordance with 35 U.S.C. § 283.

68.     Upon information and belief, Defendant has notice of the '425 Patent. First, this Complaint informs Defendant about the '425 Patent. Second, Nuhn complies with the marking requirements of 35 U.S.C. § 287 with respect to the '425 Patent. Since obtaining knowledge of its infringing activities, Defendant has failed to cease its infringing activities.

69.      Defendant's infringement of the '425 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Nuhn's rights under the patent, justifying a trebling of damages under 35 U.S.C. § 284.

70.     Defendant's infringement is exceptional and entitles Nuhn to attorneys' fees and costs under 35 U.S.C. § 285.

**Count 3 - Infringement of the '835 Patent by Defendant**

71.     Nuhn incorporates by reference and realleges each and every allegation of the previous paragraphs as if set forth herein.

72.     Nuhn owns all substantial right, title, and interest in and to the '835 Patent, including the sole and exclusive right to prosecute this action and enforce the '835 Patent against infringers, and to collect damages for all relevant times.

73.     The '835 Patent generally describes an amphibious vehicle that is equipped for the pumping of liquid manure, such as animal manure contained in a farm lagoon.

74.     The written description of the '835 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

75.     Defendant has used its one or more Wolverine Series Agitation Boats to perform manure lagoon agitation services, which infringes one or more claims of the '835 Patent.

76.     As set forth in the attached non-limiting claim chart (Exhibit 10), upon information and belief, Defendant, without authorization or license from Nuhn, has directly infringed and continues to directly infringe at least Claim 1 of the '835 Patent, either literally or under the doctrine of equivalents, by using the Wolverine Series Agitation Boat to perform manure lagoon agitation services.

77.     Nuhn has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Nuhn in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

78.     Defendant's infringement of the '835 Patent has caused, and will continue to cause, Nuhn to suffer substantial and irreparable harm.

{9190932: }

79.     Nuhn is entitled to injunctive relief in accordance with 35 U.S.C. § 283.

80.     Upon information and belief, Defendant has notice of the '835 Patent. First, this Complaint informs Defendant about the '835 Patent. Second, Nuhn complies with the marking requirements of 35 U.S.C. § 287 with respect to the '835 Patent. Since obtaining knowledge of its infringing activities, Defendant has failed to cease its infringing activities.

81.      Defendant's infringement of the '835 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Nuhn's rights under the patent, justifying a trebling of damages under 35 U.S.C. § 284.

82.     Defendant's infringement is exceptional and entitles Nuhn to attorneys' fees and costs under 35 U.S.C. § 285.

## Count 4 - Infringement of the '708 Patent by Defendant

83.     Nuhn incorporates by reference and realleges each and every allegation of the previous paragraphs as if set forth herein.

84.     Nuhn owns all substantial right, title, and interest in and to the '708 Patent, including the sole and exclusive right to prosecute this action and enforce the '708 Patent against infringers, and to collect damages for all relevant times.

85.     The '708 Patent generally describes an amphibious vehicle that is equipped for the pumping of liquid manure, such as animal manure contained in a farm lagoon.

86.     The written description of the '708 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

{9190932: }

87. Defendant has used its one or more Wolverine Series Agitation Boats to perform manure lagoon agitation services, which infringes one or more claims of the '708 Patent.

88. As set forth in the attached non-limiting claim chart (Exhibit 11), upon information and belief, Defendant, without authorization or license from Nuhn, has directly infringed and continues to directly infringe at least Claim 1 of the '708 Patent, either literally or under the doctrine of equivalents, by using the Wolverine Series Agitation Boat to perform manure lagoon agitation services.

89. Nuhn has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Nuhn in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

90. Defendant's infringement of the '708 Patent has caused, and will continue to cause, Nuhn to suffer substantial and irreparable harm.

91. Nuhn is entitled to injunctive relief in accordance with 35 U.S.C. § 283.

92. Upon information and belief, Defendant has notice of the '708 Patent. First, this Complaint informs Defendant about the '708 Patent. Second, Nuhn complies with the marking requirements of 35 U.S.C. § 287 with respect to the '708 Patent. Since obtaining knowledge of its infringing activities, Defendant has failed to cease its infringing activities.

93.  Defendant's infringement of the '708 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Nuhn's rights under the patent, justifying a trebling of damages under 35 U.S.C. § 284.

94. Defendant's infringement is exceptional and entitles Nuhn to attorneys' fees and costs under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

Wherefore, Nuhn respectfully requests that the Court enter judgment in its favor and against Defendant on the patent infringement claims set forth above and respectfully requests that this Court:

(a)     enter judgment that, under 35 U.S.C. § 271(a), Defendant has directly infringed at least one claim of the Patents-in-Suit;

(b)     in accordance with 35 U.S.C. § 283, enjoin Defendant, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with Defendant, preliminarily and permanently from infringing the Patents-in-Suit;

(c)     award Nuhn all available and legally permissible damages and relief sufficient to compensate Nuhn for Defendant's infringement of the Patents-in-Suit, including to the full extent permitted by 35 U.S.C. § 284, together with interest, in an amount to be determined at trial;

(d)     award Nuhn treble damages under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of the Patents-in-Suit;

(e)     declare this to be an exceptional case under 35 U.S.C. § 285 and award Nuhn costs, expenses, and disbursements in this action, including reasonable attorneys' fees; and

(f)     award Nuhn such other and further relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nuhn hereby demands a trial by jury on all issues triable of right by a jury.

{9190932: }

Date:   April 27, 2023                     <u>  /s/ William G. Bauer                          </u>

**WOODS OVIATT GILMAN LLP**
William G. Bauer, Esq.
1900 Bausch & Lomb Place
Rochester, New York 14604
(585) 987-2800
wbauer@woodsoviatt.com

**HARNESS, DICKEY & PIERCE, P.L.C.**
Scott E. Yackey (TX Bar Number 24100052)
(To Be Admitted *pro hac vice*)
2801 Network Blvd., Suite 600
Frisco, TX 75034
Telephone: (469) 777-5400
Facsimile: (469) 777-5401
syackey@harnessip.com

Matthew L. Cutler (MO Bar Number 46305)
(To Be Admitted *pro hac vice*)
7700 Bonhomme, Suite 400
Clayton, MO 63105
Telephone: (314) 726-7500
Facsimile: (314) 726-7501
mcutler@harnessip.com

*Attorneys for Plaintiff, Nuhn Industries Ltd.*

{9190932: }